UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT HODSDON,

               Plaintiff,

    v.

MARS, INC., et al.,

               Defendants.

Case No.  15-cv-04450-RS

**ORDER GRANTING MARS INC.'S MOTION TO DISMISS THE COMPLAINT**

## I.     INTRODUCTION

That children and forced laborers pick cocoa beans on a daily basis is indisputably an international tragedy.  The debatable question is whether defendants Mars, Inc., and Mars Chocolate North America, LLC, must inform consumers at the point of sale that Mars chocolate products likely contain cocoa beans picked under such conditions.  Plaintiff Robert Hodsdon claims that California law obligates Mars to disclose that information on its labels and seeks to mandate such disclosure.  To that end, he has filed three claims against Mars for violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (Claim 1); the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.* (Claim 2); and the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §17500 *et seq.* (Claim 3).

Mars contends that Hodsdon does not have standing to pursue these claims, and even if he does, that California law does not mandate such disclosures at the point of sale.  Mars also argues

1    that Hodsdon has not pleaded facts sufficiently to establish a violation of the UCL.  Finally, it

2    insists that, if California law requires disclosure of the labor practices of a manufacturer's

3    suppliers, then that mandatory disclosure violates the First Amendment of the U.S. Constitution.

4         The terrible reality of labor practices in the cocoa fields of Côte d'Ivoire notwithstanding,

5    the FAL, UCL, and CLRA do not require the disclosure Hodsdon seeks.  While Hodsdon has

6    shown he has standing to bring these claims, the FAL does not provide the relief he requests, the

7    claim accordingly may not proceed.  Because Mars has no duty to disclose this information at the

8    point of sale, Hodsdon's claims under the CLRA and the "unlawful" and "fraudulent" prongs of

9    the UCL similarly may not advance.  Finally, the business practice to which Hodsdon objects—

10   non-disclosure of information about its supply chain—is not "unfair" within the meaning of the

11   UCL.  There appears to be no possible method to cure these deficiencies, and therefore Hodsdon

12   will not have leave to amend the complaint.  Because Mars did not have a duty to disclose

13   information about child labor in its supply chain, there is no need to address whether the safe

14   harbor rule protects it from liability or whether Hodsdon's proposed mandatory disclosure would

15   violate the First Amendment.

## II.    FACTS AND PROCEDURAL HISTORY[1]

17   Mars markets and distributes chocolate products in the United States and abroad.  Some of

18   the cocoa beans used to make Mars's chocolate come from Côte d'Ivoire, where children and

19   forced laborers wield dangerous tools, transport heavy loads, and face exposure to toxic

20   substances.  Children often arrive at these Ivoirian farms having been sold to, or kidnapped by,

21   traffickers.  The working conditions on the farms are deplorable.  Laborers often do not receive

22   pay, sleep in locked quarters, and fear corporal punishment.

23   American and international organizations have identified and documented these abuses

24   extensively.  Mars and many other chocolate manufacturers have acknowledged that their products

---

[1] Because Defendants have filed a motion to dismiss, all facts alleged in the complaint are taken as true for the purpose of this motion.

United States District Court
Northern District of California

1   may contain cocoa harvested by children.  Indeed, in 2001, Mars signed an agreement with other

2   chocolate manufacturers to develop and to implement certification procedures to eradicate the

3   worst forms of child labor on cocoa farms.  The group hoped to achieve this goal by 2005, but to

4   date, Mars and the other signatories have not been able to establish such a system.  Mars twice

5   acknowledged its failure to achieve a certification system and asserts that, by 2020, it hopes to

6   purchase all cocoa from certified sources.  According to the most recent reports, the number of

7   children working on cocoa farms has increased since 2005.  As of 2014, "[o]nly 36% of [Mars's]

8   cocoa was certified."  Compl. ¶ 29.

9       No information about the Ivoirian cocoa farms' labor practices in Mars's supply chain

10  appears on the labels or advertisements for most of Mars's chocolate products, such as M&M's,

11  Snickers, and Milky Way bars.  In contrast, the label for Dove chocolates—another Mars

12  chocolate product—states, "We buy cocoa from Rainforest Alliance Certified farms, traceable

13  from the farms into our factory."  Compl. ¶47.  Hodsdon avers that he "would not have purchased"

14  or "paid as much for" Mars chocolate products had the labels included information about the labor

15  practices of Mars's cocoa suppliers.  Compl. ¶ 80.  He insists that Mars was obligated to include

16  information about the source of its cocoa beans because consumers, like him, are willing to pay

17  more for ethically sourced chocolate.  *See* Compl. ¶¶ 55-58 (citing studies).

## III.    LEGAL STANDARD

19      A pleading that states a claim for relief must contain . . . a short and plain statement of the

20  claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  "[D]etailed

21  factual allegations are not required," but a complaint must provide sufficient factual allegations to

22  "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

23  (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).  In addition, "in allegations of fraud or

24  mistake, a party must state with particularity the circumstances constituting fraud and mistake."

25  Fed. R. Civ. P. 9(b).  To satisfy this requirement, a plaintiff must plead "the who, what, when,

26  where, and how that would suggest fraud."  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)

27  (internal quotation marks omitted).  "A plaintiff must set forth *more* than the neutral facts

28

necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and alteration omitted).

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in the complaint.  Dismissal is appropriate when the complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint in whole or in part is subject to dismissal if it lacks a cognizable legal theory or the complaint does not include sufficient facts to support a plausible claim under a cognizable legal theory.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard requires "more than a sheer possibility that the defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotation marks omitted).  When plaintiffs have failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment."  *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

## IV.   DISCUSSION[2]

---

[2] Mars and Hodsdon have submitted requests for judicial notice.  Federal Rule of Evidence 201(b) permits courts to take judicial notice of facts that are "not subject to reasonable dispute" and that are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."  In addition, documents to which a complaint refers may be incorporated by reference.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).  Mars requests judicial notice of several government documents, academic studies, and public statements on Mars's website—to which Hodsdon refers in his complaint.  Mars also seeks judicial notice of the legislative history of the Supply Chains Act, Cal. Civ. Code § 1714.43, and a report by the U.S. Department of Labor.  Hodsdon does not oppose Mars's requests and makes a few requests for judicial notice of his own.  Specifically, he requests judicial notice of a recent U.S. District Court opinion and documents from the International Labour Organization and United Nations.  Mars does not oppose Hodsdon's request.  All submitted documents are appropriate for judicial notice either because they are publicly available or because Hodsdon has incorporated those documents into the complaint.  Accordingly, both parties' requests for judicial notice are granted.

**A.  Standing**

To show standing under the UCL and FAL, Hodsdon must aver facts establishing that he "suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus & Prof. Code §§ 17204, 17536.  To that end, he must establish that he actually relied on "the allegedly deceptive or misleading statements."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011) (internal quotation marks omitted).  Similarly, the CLRA requires proof of actual reliance and economic injury.  *Victor v. R.C. Bigelow, Inc.*, No. 13-CV-02976-WHO, 2014 WL 1028881, at *5 (N.D. Cal. Mar. 14, 2014).  Article III of the U.S. Constitution also requires that a plaintiff aver "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted).  Mars contends that Hodsdon's complaint does not establish he has standing to sue because he (1) does not claim that he purchased chocolate containing cocoa beans harvested by children or forced laborers; (2) cannot trace any of Mars's chocolate to particular farms that use the objectionable labor practices; and (3) did not state that he relied upon the omitted information when deciding to purchase chocolate.

The Ninth Circuit has already rejected Mars's first two arguments.  California law permits litigants to pursue claims under the UCL, CLRA, and FAL if they show that the deceptive practice caused pecuniary loss, i.e., that "'the consumer paid more than he or she actually valued the product.  That increment, the extra money paid, is economic injury and affords the consumer standing to sue.'"  *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (quoting *Kwikset*, 51 Cal. 4th at 330) (discussing the UCL and FAL); *see also id.* at 1108 ("The district court's conclusion that [plaintiff] failed to establish standing under the CLRA because he did not suffer 'any damage' is erroneous for the same reasons that its determinations regarding the UCL and FAL standing were wrong.").  Thus, "[a]consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging . . . that he or she would not have bought the product but for the misrepresentation."

1  *Kwikset*, 51 Cal. 4th at 330.

2         That is precisely what Hodsdon has done:  "Had Plaintiff and Class Members known the

3  truth, they would not have purchased Mars Chocolate Products or paid as much for them."

4  Compl. ¶ 10; *see also id.* ¶¶ 13, 80.  Moreover, the problem, according to Hodsdon, is that he was

5  unaware that cocoa harvested by children and forced laborers were in the *supply chain*, not that he

6  purchased chocolate actually tainted by child labor.  Hodsdon ties his harm to the lack of certainty

7  about the source of the cocoa beans, not to consumption of cocoa products actually harvested by

8  child and forced laborers.  In so doing, he has established injury in fact.

9         Mars's final argument—that Hodsdon has not averred reliance—is also unpersuasive.  A

10 plaintiff may prove reliance "by showing that the defendant's misrepresentation or nondisclosure

11 was an immediate cause of the plaintiff's injury-producing conduct."  *In re Tobacco II Cases*, 46

12 Cal. 4th 298, 326 (2009) (internal quotation marks omitted).  He may accomplish that "by

13 showing that in its absence the plaintiff in all reasonable probability would not have engaged in

14 the injury-producing conduct."  *Id.* (quotation marks omitted).  The UCL does not require,

15 however, that the plaintiff demonstrate the misrepresentation was the only cause of the injury.  *Id.*

16 Hodsdon claims that he "saw the product packaging and labeling as well as the signage in retail

17 stores where he purchased the Chocolate Products" and "would not have purchased [them] or paid

18 as much for them" had he known the truth.  Compl. ¶ 13.  If Hodsdon saw the labels, there is a

19 reasonable inference that he read them.  Accordingly, Hodsdon has at least shown that he saw the

20 products and the labels and has adequately pleaded facts sufficient to find that he has standing.

21        **B.  Omissions and the FAL**

22        Hodsdon asserts that Mars's omission of information about the child and forced labor

23 practices in its supply chain violates the FAL.  Mars contends that the FAL applies to only

24 affirmative misrepresentations, not omissions.

25        The FAL proscribes "mak[ing] or disseminat[ing] . . . any statement . . . which is untrue or

26 misleading, and which is known, or by the exercise of reasonable care should be known, to be

27 untrue or misleading . . ." "with intent directly or indirectly to dispose of real or personal

United States District Court
Northern District of California

property." Cal. Bus. & Prof. Code § 17500.  Many courts have held a plaintiff who asserts that a business omitted a material fact in its advertisements, labels, or literature has not stated a claim under the FAL.  *See, .e.g.*, *Norcia v. Samsung Telecomms. Am., LLC*, No. 14-CV-00582-JD, 2015 WL 4967247, at *8 (N.D. Cal. Aug. 20, 2015) ("There can be no FAL claim where there is no 'statement' at all."); *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1222 (C.D. Cal. 2012) ("Because she has not adequately alleged that Mary Kay made any actual misleading or untrue statements, she cannot make out a claim under the FAL.").  Other courts have reached the opposite conclusion.  *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 991 (S.D. Cal. 2014) ("[T]he Court finds Plaintiffs' fraud-based omission claims are sufficiently plead[, and therefore] DENIES Sony's motion to dismiss Plaintiffs' claims under the . . . FAL . . . ."); *Tait v. BSH Home Appliances Corp.*, No. SACV 10-00711 DOC, 2011 WL 3941387, at *2 (C.D. Cal. Aug. 31, 2011) (denying a motion to dismiss FAL claims even though plaintiffs "assert[ed] a theory of misrepresentation by omission").

These differing results are not necessarily discordant.  When the crux of a plaintiff's FAL claim is that the defendant did not make any statement at all about a subject, then a claim under the FAL may not advance.  Stated differently, when the defendant has not made any statements at all, a plaintiff cannot assert a claim under the FAL.  In contrast, a plaintiff may state a claim under the FAL if the defendant actually made a statement, but omitted information that undercuts the veracity of the statement.  *See In re Sony*, 996 F. Supp. 2d at 991 (denying a motion to dismiss a FAL claim where defendant had claimed to take reasonable steps to secure users' personal information, but omitted information about deficiencies in the product's security system); *Tait*, 2011 WL 3941387, at *2 (denying a motion to dismiss FAL claims when plaintiffs claimed defendant's representations—that its washing machine was "Xxtra Sanitary" and "high efficiency"—were misleading because the machines accumulated mold and bacteria and required extra cleaning).

Here, Hodsdon has asserted the former type of claim, i.e., that Mars violated the FAL by failing to issue any statement at all.  Thus, he has not stated a viable claim for relief under the

United States District Court
Northern District of California

1    FAL, and Mars's motion to dismiss this claim is granted without leave to amend.[3]

2        **C.  Duty to Disclose Under the CLRA and UCL**

3        The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or

4    practices undertaken by any person in a transaction intended to result or which results in the sale

5    or lease of goods or services to any consumer," Cal. Civ. Code § 1770(a), and prohibits conduct

6    "likely to mislead a reasonable consumer," *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App.

7    4th 663, 680 (2006) (internal quotation marks omitted).  The UCL prohibits "unfair competition"

8    defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive,

9    untrue, or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  Hodsdon claims Mars

10   violated all three prongs of the UCL.  The statute's "unlawful" prong borrows violations from

11   other laws, and Hodsdon has chosen to link Mars's alleged violation of the UCL to the alleged

12   violation of the CLRA.  In addition, he contends that Mars fraudulently omitted material

13   information about its product, i.e., the type of information that would affect a reasonable

14   consumer's purchasing decisions.

15       To prevail with his CLRA and UCL claims, Hodsdon must demonstrate that Mars had a

16   duty to disclose this information.  Fraudulent omissions may violate the CLRA when the omission

17   is "contrary to a representation actually made by the defendant, or an omission of a fact the

18   defendant was obliged to disclose." *Daugherty*, 144 Cal. App. 4th at 835.  Mars contends that

19   neither the UCL nor the CLRA mandate disclosure of information about known child or forced

20   labor in a manufacturer's supply chain because such information does not pertain to a safety issue

21   or product defect.  Hodsdon argues that the duty to disclose is not so limited and insists that such a

22   _____

23   [3] Although Hodsdon suggests that Mars has made partial representations about the source of its
     cocoa in corporate statements, *see* Compl. ¶ 101, the focus of his claim is on the message that does
24   *not* appear on Mars's chocolate products, *see* Compl. ¶ 46 ("[A] consumer reviewing the
     packaging for Mars Chocolate Products will find no disclosure of the likelihood that child or
25   forced labor was used to produce the cocoa beans in the supply chain for Mars Chocolate Products
     . . . .").  Furthermore, in his response in opposition to Mars's motion to dismiss the complaint,
26   Hodsdon expressly clarified that his "claim for liability under the UCL, CLRA, and FAL is based
     on Mars's omission of known child and slave labor in its supply chain, as opposed to affirmative
27   misrepresentations."  Pl.'s Opp'n to Mot. to Dismiss at 9 n.46.

28

1    duty arises when "the defendant had exclusive knowledge of material facts not known to the

2    plaintiff." *Falk v. General Motors Corp.*, 496 F. Supp. 3d 1088, 1095 (N.D. Cal. 200) (quoting

3    *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)).

4        "California courts have generally rejected a broad obligation to disclose," except for

5    omissions that are "'contrary to a representation actually made by the defendant, or . . .

6    omission[s] of a fact the defendant was obligated to disclose.'" *Wilson v. Hewlett-Packard Co.*,

7    668 F.3d 1136, 1141 (9th Cir. 2012) (quoting *Daugherty v. Am. Honda Co.*, 144 Cal. App. 4th

8    824, 835 (2006). In *Daugherty*, the California Court of Appeal concluded that the defendant did

9    not have a duty to disclose product defects, which did not pose any risk of physical injury or safety

10   concerns. 144 Cal. App. 4th at 836. Interpreting *Daugherty*, the Ninth Circuit concluded that a

11   plaintiff cannot state a claim under the CLRA absent averments of a product design defect or a

12   safety hazard. *Wilson*, 668 F.3d at 1143.

13       Muddying the waters is *Falk*, which held that the failure to disclose material information

14   may arise in four circumstances: "(1) when the defendant is in a fiduciary relationship with the

15   plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the

16   plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when

17   the defendant makes partial representations but also suppresses some material fact.'" *Id.* at 1142

18   (quoting *Falk*, 496 F.Supp.2d at 1095). In *Wilson*, plaintiffs argued *Falk* established that claims

19   under the CLRA need not involve safety issues. The Ninth Circuit examined *Falk*, but concluded

20   that safety issues were central to the plaintiffs' CLRA claim. *Id.* at 1142.

21       Hodsdon insists that *Wilson* does not foreclose his claim and relies on *Stanwood v. Mary*

22   *Kay, Inc.*, 941 F. Supp. 2d 1212, 1221 (C.D. Cal. 2012), to support this contention. In *Stanwood*,

23   the district court concluded that the Ninth Circuit's holding in *Wilson* was limited to product

24   liability cases where warranties protect the consumers. Absent a warranty, the *Stanwood* court

25   reasoned, "common law fraud . . . protect[s] consumers," and therefore plaintiffs need establish

26   only that the omission was material. *Id.*

27

28

1    *Stanwood* stands alone in this conclusion; Hodsdon has not identified any other instances

2    where district courts examined *Wilson* and reached the same conclusion.  Indeed, the

3    overwhelming majority of courts to consider the issue have found the opposite.  *See, e.g.*, *Wirth v.*

4    *Mars, Inc.*, SA CV 15-1470-DOC, 2016 WL 471234, *4-6 (C.D. Cal. Feb. 5, 2016) (holding that

5    defendant did not have a duty to disclose "information concerning the likelihood of forced labor to

6    consumers" because such information "does not present any safety issues for consumers" or

7    "concern a product defect"); *Marcus v. Apple, Inc.*, No. C 14-03824 WHA, 2015 WL 151489, at

8    *6 (N.D. Cal. Jan. 8, 2015) (dismissing plaintiffs' CLRA claim because they did not plead that

9    defendant failed to disclose safety issues or product defects); *Willis v. Buffalo Pumps Inc.*, 34 F.

10   Supp. 3d 1117, 1132 (S.D. Cal. 2014) ("In *Wilson*, the Ninth Circuit rejected a broad obligation to

11   disclose all material facts, but accepted that a manufacturer would be 'bound to disclose' a defect

12   that posed safety concerns or risk of physical injury.").  Indeed, in an unpublished opinion, the

13   Ninth Circuit recently concluded that the UCL and CLRA do "not recognize a cause of action for

14   publicizing EP fuel economy estimates and omitting further explanation" because no safety issue

15   is present and there were no affirmative misrepresentations.  *Gray v. Toyota Motor Sales, U.S.A.,*

16   *Inc.*, 554 F. App'x 608, 609 (9th Cir. 214).

17       Hodsdon has not convincingly explained why *Stanwood* should control the outcome here

18   in light of the overwhelming authority to the contrary.  To start, the Ninth Circuit did not limit its

19   holding to cases involving product defects.  Rather, the court discussed the issue in general terms.

20   *See Wilson*, 668 F.3d at 1141 ("California courts have generally rejected a broad obligation to

21   disclose . . . .").  Moreover, in *Wilson*, the Ninth Circuit cited with approval a district court opinion

22   rejecting plaintiffs' contention that the duty to disclose extends to non-safety issues.  *Id.* (citing

23   *O'Shea v. Epson Am., Inc.*, No. CV 09-8063 PSG (CWx), 2011 WL 3299936, at *7-9 (C.D. Cal.

24   July 29, 2011)).[4]  Finally, Mars offers compelling reasons to decline to pick up *Stanwood*'s torch.

25   _____

26   [4] In *O'Shea*, the court specifically noted that the case was not a products liability case.  2011 WL
     3299936, at *8.  Nevertheless, the court rejected the duty to disclose information about a printer's

27   efficient (or inefficient) use of ink:  "California's consumer protection laws, though broad, do not
     extend so far as to require a company to denigrate its own products or promote those of its

28                                                            ORDER GRANTING MARS'S MOTION TO DISMISS
                                                             CASE NO. 15-cv-04450-RS

1   The definition of a material omission has stunning breadth, and could leave manufacturers

2   (chocolate or otherwise) little guidance about what information, if any, it must disclose to avoid

3   CLRA or UCL liability.  *See* Def.'s Mem. at 3.  In light of *Wilson* and overwhelming authority,

4   manufacturers are duty-bound to disclose only information about a product's safety risks and

5   product defects.  The duty to disclose does not extend to situations, as here, where information

6   may persuade a consumer to make different purchasing decisions.  *Wirth*, 2016 WL 471234, at

7   *5-6.

8        Hodsdon does not aver that the admittedly horrific labor practices pose safety risks to

9   chocolate consumers.  Nor does the fact that Mars's cocoa suppliers benefit from such labor

10  practices constitute a product defect.  Absent such a claim, the complaint fails to state a claim

11  under the CLRA.  Accordingly, Hodsdon's UCL claim under the "unlawful" prong also fails.

12       **D.  Fraudulent Omissions Under the UCL**

13       Because Mars had no duty to disclose the probability that child and forced labor practices

14  arise in its supply chain, Hodsdon's claim of fraudulent omission under the UCL, fall as well.  "A

15  business practice is fraudulent under the UCL if members of the public are likely to be deceived."

16  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (citing *Puentes v. Wells*

17  *Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638 (2008)).  Hodsdon does not aver that Mars made

18  any misleading statements about the source of its label; indeed, his chief complaint is that Mars

19  made no statements whatsoever.  He cannot show that the failure to disclose information that Mars

20  was not obliged to disclose in the first place would mislead the reasonable consumer.  *Daugherty*,

21  144 Cal. App. 4th at 838 ("We cannot agree that a failure to disclose a fact one has no affirmative

22  duty to disclose is 'likely to be deceived' by the omission of a fact that was not required to be

23  disclosed in the first place."); *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557

24  (2007) ("Absent a duty to disclose, the failure to do so does not support a claim under the

25

26  competitors just because consumers might be interested in the comparison.  The duty Plaintiffs
27  seek to impose upon Epson is properly served by independent consumer reports."  *Id.*

28

United States District Court
Northern District of California

1    fraudulent prong of the UCL.").  Thus, Hodsdon's UCL claim under the fraudulent prong is also

2    not viable.

3        **E.   "Unfair" Conduct Under the UCL**

4        Hodsdon also asserts a claim for violation of the UCL under the "unfair" prong.  The

5    precise contours of an "unfair" business practice under the UCL are currently in flux.  *See Davis*,

6    691 F.3d at 1169-70.  California courts have used two different definitions of an "unfair" business

7    practice.  First, many courts have found a business practice "unfair" when it "offends an

8    established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or

9    substantially injurious to consumers."  *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal.

10   App. 4th 861, 886-87 (1999) (internal quotation marks omitted).  This approach requires courts to

11   "examine the practice's 'impact on its alleged victim, balanced against the reasons, justifications

12   and motives of the alleged wrongdoer.'"  *Davis*, 691 F.3d at 1169 (quoting *S. Bay Chevrolet*, 72

13   Cal. App. 4th at 887).  The California Supreme Court has criticized this approach, however, as

14   "too amorphous" to provide meaningful "guidance to courts and businesses."  *Cel-Tech*

15   *Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 185 (1999).

16       "The second test—the 'public policy' test—requires that the UCL claim be tethered to

17   some specific constitutional, statutory, or regulatory provisions."  *McVicar v. Goodman Global,*

18   *Inc.*, 1 F. Supp. 3d 1044, 1054 (C.D. Cal. 2014) (citing *Scripps Clinic v. Superior Court*, 108 Cal.

19   App. 4th 917, 940 (2003); *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002))

20   (internal quotation marks omitted).[5]  Absent guidance from the California courts about the proper

21   definition of an "unfair" business practice, federal courts have applied both tests.  *See Lozano v.*

22

23   [5] There is a third test, which "borrows from section 5 of the Federal Trade Commission Act,
     finding 'unfair' business practices where (1) the consumer injury is substantial, (2) any
24   countervailing benefits to consumers or competition do not outweigh the injury, and (3) the
     consumers could not reasonably avoid the injury."  *McVicar*, 1 F. Supp. 3d at 1054 (citing
25   *Comancho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006); *Daugherty*, 144 Cal.
     App. 4th at 839).  This test does not apply in consumer cases, and therefore is inapplicable here.
26   *Lozano*, 504 F.3d at 736 ("Though the California Supreme Court did reference FTC's section 5 as
     a source of 'guidance,' that discussion clearly revolves around anti-competitive conduct, rather
27   than anti-consumer conduct." (internal alteration omitted)).

28

1    *AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007) ("The remaining options, then, are

2    to apply *Cel-Tech* directly to this case and require that the unfairness be tied to a 'legislatively

3    declared' policy, or to adhere to the former balancing test under *South Bay*.  These options,

4    however, are not mutually exclusive." (citations omitted)).

5        First, Hodsdon cannot show that Mars's alleged wrongdoing—the failure to state that its

6    chocolate products likely contain cocoa harvested by child and forced labor—"is immoral,

7    unethical, oppressive, unscrupulous or substantially injurious to consumers."  *S. Bay Chevrolet*, 72

8    Cal. App. 4th at 887.  The harm at issue here is that Hodsdon may not have purchased Mars's

9    chocolate products at all, or would have paid less for them, had he been aware of the prospect for

10   child labor in Mars's supply chain.  Such information is, in fact, readily available to consumers on

11   Mars's website.  Given that Hodsdon, like any other consumer, has access to information about

12   the source of Mars's cocoa beans, the absence of such information on the packaging is not

13   "substantially injurious to consumers" or necessarily immoral.  Granting that the labor practices at

14   issue are immoral, there remains an important distinction between them and the actual harm for

15   which Hodsdon seeks to recover, namely his purchase of Mars's chocolate products absent any

16   disclosure.  Mars's failure to disclose information it had no duty to disclose in the first place is not

17   substantially injurious, immoral, or unethical, and Hodsdon's UCL claim may therefore not

18   advance.

19        Under the second test, Hodsdon's UCL claim also fails.  While Hodsdon invokes

20   statements declaring a general public policy against the use of child and forced labor, he does not

21   tether the harm he claims to any "specific constitutional, statutory, or regulatory provisions."

22   *McVicar*, 1 F. Supp. 3d at 1054.  At best, Hodsdon references statements of international non-

23   governmental organizations and U.S. legislators relative to the horrors of child labor.  *See* Compl.

24   ¶¶ 27, 31.  Absent, however, is any reference to specific legislative or regulatory acts, which

25   would support his contention that Mars's non-disclosure violates public policy.[6]  Thus, Hodsdon

26   

27   [6] Hodsdon may not rely on California's public policy against false and misleading advertising
     because he cannot state a claim for violations of the CLRA or the FAL.

28   

United States District Court
Northern District of California

1   has not satisfied either test to establish that Mars's failure to disclose constitutes an "unfair"

2   business practice under the UCL.

3   **F.   The Safe Harbor Rule**

4        Mars urges dismissal for the additional reason that the Supply Chains Act, Cal. Civ. Code

5   § 1714.43, created a "safe harbor" for the failure to disclose the existence of child or forced labor

6   in its supply chain.  Although the California legislature designed the provisions of the UCL "to

7   permit tribunals to enjoin ongoing wrongful business conduct in whatever context such activity

8   might occur," plaintiffs may not use the UCL "to invade 'safe harbors' provided by other

9   statutes."  *Loeffler v. Target Corp.*, 58 Cal. 4th 1081, 1125 (2014) (internal quotation marks

10  omitted).  The same is true for the remedies provided under the CLRA.  *Id.*  "Safe harbors" come

11  into being when "the Legislature has permitted certain conduct or considered a situation and

12  concluded no action should lie."  *Id.*  "To forestall an action under the unfair competition law,

13  another provision must actually 'bar' the action or *clearly permit* the conduct."  *Id.* (internal

14  quotation marks omitted) (emphasis in original).  For example, statutes defining a privilege render

15  the conduct immune from tort liability and the UCL.  *Id.*  No safe harbor exists, "[h]owever, if the

16  Legislature did not consider that activity in those circumstances."  *Cel-Tech*, 20 Cal. 4th at 183.

17  Thus, in the absence of "a specific provision," courts may find business practices unfair under the

18  UCL.  *Id.*

19        Section 1714.43(a) of the California Civil Code requires retailers and manufacturers that

20  earn more than $1,000,000 in gross receipts to disclose their "efforts to eradicate slavery and

21  human trafficking from [their] direct supply chain for tangible goods offered for sale."  Retailers

22  and manufacturers subject to the statute must post on their website's homepage "a conspicuous

23  and easily understood link to the required information," or provide "written disclosure within 30

24  days of receiving a written request for the disclosure from a consumer."  *Id* § 1714.43(b).  "At a

25  minimum," retailers and manufacturers subject to the Act must disclose (1) whether they or a third

26  party conducts verifications to evaluate and to address risks of human trafficking; (2) whether they

27  or an independent agency audits their suppliers "to evaluate supplier compliance with company

28

1    standards for trafficking and slavery in supply chains"; (3) whether they require their "direct

2    suppliers to certify that materials incorporated into the product comply with the laws regarding

3    slavery and human trafficking of the country or countries in which they are doing business"; (4)

4    whether they "maintain[] internal accountability standards and procedures for employees or

5    contractors failing to meet company standards regarding slavery and trafficking"; and (5) whether

6    they train employees responsible for the direct supply chain management about mitigating the

7    risks of human trafficking and slavery in the supply chain. *Id.* § 1714.43(c). Only the Attorney

8    General has authority to enforce the Supply Chains Act, but the Act does not "limit remedies

9    available for a violation of any other state or federal law." *Id.* § 1714.43(d).

10        Mars relies on two district courts orders for the proposition that the Supply Chains Act

11   creates a safe harbor for manufacturers and retailers subject to the Act. *See Barber v. Nestle USA,*

12   *Inc.*, No. SACV1501364CJCAGRX, 2015 WL 9309553, at *2-5 (C.D. Cal. Dec. 9, 2015); *Wirth*,

13   2016 WL 471234, at *9. In both *Barber* and *Wirth*, plaintiffs asserted claims under the FAL,

14   UCL, and CLRA based on defendants' alleged failure to disclose on their packaging that the

15   seafood in their cat food was likely the product of forced labor. *See Barber*, 2015 WL 9309553, at

16   *1; *Wirth*, 2016 WL 471234, at *1-2.

17        There are, however, reasons to question whether the safe harbor doctrine is applicable here.

18   As an initial matter, the Supply Chains Act concerns slavery and human trafficking, not child

19   labor. *See* Cal. Civ. Code § 1714.43. While the distinction between child labor and forced labor

20   may be thin, the safe harbor doctrine cautions against creating safe harbors in the absence of

21   "specific legislation." *Cel-Tech*, 20 Cal. 4th at 182. Second, ambiguity remains regarding how to

22   determine whether the legislature "considered a situation and concluded no action should lie."

23   Here, for example, although there is evidence suggesting the legislature considered how to provide

24   consumers with "reasonable access to basic information to aid their purchasing decisions," Mars's

25   RJN Ex. M at 1, the legislative history is silent about whether the legislature contemplated

26   disclosures on labels. Finally, if a safe harbor exists here, an anomalous situation arises:

27   businesses earning less than $100,000,000 in gross receipts worldwide may be subject to liability

28

under the UCL and CLRA, while large corporations are not.  In light of the absence of a duty to disclose as set forth above, these safe harbor issues need not be reached on this record.

**V.     CONCLUSION**

Because the FAL, UCL, and CLRA do not require Mars to disclose on labels that its chocolate products may contain cocoa beans harvested by child and or forced labor, Mars's motion to dismiss the complaint is granted.  In these circumstances, amendment would be futile, and therefore no leave to amend is granted.

**IT IS SO ORDERED**.

Dated:  February 17, 2016

_____
RICHARD SEEBORG
United States District Judge

United States District Court
Northern District of California